Douglas Pattison and Ray T. Luney, Trading as Pattison & Luney, Defendants in Error, v. Chicago & Northwestern Railway Company, Plaintiff in Error.

Gen. No. 8,033.

Opinion filed September 24, 1929.

R. R. TIFFANY, NELSON J. WILCOX and NELSON TROTTMAN, for plaintiff in error.

DOUGLAS PATTISON and RAY T. LUNEY, for defendants in error.

MR. JUSTICE JETT delivered the opinion of the court.

This is a suit brought by Douglas Pattison and Ray T. Luney, partners doing business under the firm name and style of Pattison & Luney, defendants in error, and will be hereinafter referred to as plaintiffs, against Chicago & Northwestern Railway Company, plaintiff in error, and hereinafter called defendant, to recover for legal services rendered by said plaintiffs in a case pending in the circuit court of Stephenson county, in which the defendant had instituted suit against H. A. Hillmer & Company, for undercharges on a certain shipment of coal.

This cause was heard by the court without a jury with a finding and judgment in favor of the plaintiffs and against defendant in the sum of $362. The defendant prosecutes this writ of error.

The declaration consists of two counts. The first is for money due plaintiffs for work, care, diligence, and attendance of the plaintiffs, by them performed and bestowed as attorneys and solicitors of the defendant at its request and for fees due them in respect thereto, and for materials and necessary things by them provided in and about said work. The second count is the usual form of the common counts.

To the declaration the defendant pleaded the general issue and gave notice of special matters relied on for a defense.

It appears that on February 24, 1919, while the lines of the defendant's railway company were operated by the Federal Railway Administration, defendant's general solicitor addressed a letter to Douglas Pattison, in which he offered him an appointment as local attorney to represent the Chicago & Northwestern Railway Company in Stephenson county, during the period of government control. In this letter, after a brief outline of the nature of the services required, the following appears: "As to compensation, we would expect your charges to be reasonable and subject to the approval of the General Solicitor. It is our uniform practice to require bills to be made out at least quarterly so that unsettled charges of long standing will not accrue."

Pattison replied on February 25, 1919, accepting the appointment, and in his reply, among other things said:

"I will be glad to act for you out here, and as regards compensation, your statement that you would expect my charges to be reasonable and subject to approval of the General Solicitor is absolutely satisfactory to me."

The suit brought by the Chicago & Northwestern Railway Company, the defendant herein, against H. A. Hillmer & Company, had been pending and at issue since November, 1917, and up to the time of the making of the contract with Pattison, had been handled by other attorneys; that after the making of said contract with Pattison, some correspondence was had between Pattison and the general solicitor of the defendant Railway Company relative to said Hillmer case; that the amount involved in said Hillmer suit, exclusive of interest and cost, was $82.91, and that it was brought to collect an undercharge for transportation; that on or about March 1, 1920, the United States Railroad Administration ceased to operate defendant's railway

and that defendant continued Pattison as local attorney at Freeport and as such, in charge of said Hillmer case on the terms and conditions provided in the contract of employment; that thereafter, under repeated and many urgings from defendant, Pattison did, on December 23, 1924, bring the said Hillmer case on for trial before the court without a jury on a stipulation of facts, and that thereafter a judgment was rendered in favor of Chicago & Northwestern Railway Company, who was the plaintiff in that cause, and the defendant in this proceeding for the said principal sum, together with interest and costs aggregating $97.98.

The bill submitted by Pattison & Luney, plaintiffs, against the Chicago & Northwestern Railway Company, defendant, for the services rendered in connection therewith, was itemized and totaled the sum of $362.

The officers of the defendants stated to the plaintiffs that $24.50, was a reasonable and usual compensation for such services but that they were willing to pay $50. Plaintiffs refused such tender and this suit followed.

The question herein involved is, as to whether that part of the provision of the contract with reference to the compensation to be paid to the plaintiffs shall be subject to the approval of the general solicitor is to be given effect.

Plaintiffs insist the question for determination is, as to whether or not the compensation charged by them, and for which they recovered judgment, is the usual reasonable and customary fee charged and paid in the county of Stephenson for like services.

The record is quite voluminous and is largely made up of testimony of Pattison and Luney tending to show that they performed certain acts in connection of the Hillmer suit; that the acts performed took certain amounts of time for which charges were made and for

which the reasonable charge would be at the rate of about $5 per hour.

Under the contract the charges were to be "reasonable and subject to the approval of the General Solicitor." Plaintiffs in effect insist that if the charges are in accordance with the usual per diem rate in Stephenson county, which is stated by various witnesses to be approximately $5 per hour, then such charges are reasonable whether or not the work was necessary; and that if reasonable when tested by this criterion, the general solicitor had no power under the contract to reduce them.

The plain meaning of the language in the contract is, that the charge must be reasonable, and, if reasonable, must be subject to the approval of the general solicitor. If the general solicitor could not reduce the charges under the contract to a point which met with his approval, then these words were superfluous, and regardless of the contract, the defendant would, in every case, be liable upon a *quantum meruit* for a reasonable value of the services performed and the very purpose of the contract would be defeated. If the contention of the plaintiffs is correct, there would be no object in having these words in the contract.

The correspondence offered in evidence not only discloses that the plaintiffs approved the provision in the contract, providing that the charges should be reasonable and be subject to the approval of the general solicitor at the time of their employment, but it also shows that after the bill had been submitted they acquiesced in said provision.

It is said by the plaintiffs: "If the contention of defendant were the correct construction to place upon this contract, then the provision that the charges shall be reasonable could be rendered of no force by the arbitrary action of the General Solicitor refusing to approve a reasonable charge."

Conceding that the general solicitor did not have the power to exercise in bad faith this right to revise plaintiffs' bills, no such question is presented by the record herein. The record fails to disclose that any question of bad faith is raised by the plaintiffs, or suggested by them, either in the pleading or in the testimony.

*Howe v. Kenyon,* 4 Wash. 677, 30 Pac. 1058, was a case in which an attorney sued on a *quantum meruit* for the value of services alleged to be of the reasonable value of $700. The attorney admitted the payment of $100, and sought to recover $600; the defendant admitted the services had been performed, but relied upon a contract under which the attorney agreed to render professional services, "for a reasonable attorney's fee, such as Mr. Kenyon is able to pay and thinks reasonable." The defendant said that $300 was reasonable compensation and that after crediting $100 he had offered $200, which the attorney refused to accept. On the trial of the cause, the court charged the jury that under the contract the plaintiff had a right to receive a reasonable attorney's fee, and that the contract did not make the client the sole arbiter of what he should pay, unless it was a reasonable fee. The Supreme Court of the State of Washington held this charge to be error and in its opinion the court among other things said: "We think the Court was wrong in this charge. This was a peculiar sort of contract, by which the respondent bound himself to do certain work, and accept therefor the compensation which the appellant should deem just, he acting in good faith and according to his ability. It was a contract which he had the power to make. He was perfectly free to refuse to perform any services for the appellant, excepting upon payment of a reasonable fee, and, having made this contract, he must abide by it, unless he can show that the appellant, through some fraudulent or other bad motive, has arbitrarily refused to

name or pay what is clearly a reasonable fee. Counsel and client are liable to differ very materially in their estimation of what services of this kind are worth. Either has the right to maintain himself independent of the other, or he may, if he sees fit, contract to put himself, as he would consider, somewhat within the power of the other. The only attempt to avoid the effect of the appellant's decision in this case was to prove, by other attorneys, that their judgment was different as to the proper amount of compensation from that of the appellant. The appellant's ability was not touched upon. On the other hand, we think the appellant has shown his good faith in the matter by at all times offering to pay what is certainly not, even under the testimony of the respondent's witnesses, an insignificant sum. The judgment should therefore be reduced to $200, and affirmed, at respondent's costs.''

In *Tennant v. Fawcett,* 94 Tex. 111, 58 S. W. 824, it appears that an attorney sued to recover the reasonable value of certain services, and the defendant insisted that the services for which he sought to recover were rendered under a special contract in which it was agreed that the client should be liable only for such sum as he, himself, should fix for compensation for the services and that he had fixed the amount of this compensation and paid the same. On the trial of the cause the court instructed the jury that they should allow the plaintiffs such sum or sums as the services were reasonably worth.

An appeal was prosecuted to the Supreme Court of the State of Texas, and in its decision the court said: ''Should one agree to render a service for another gratuitously, it would seem that he could not recover for the service, for the reason that there is no promise, express or implied, to pay for it. The law would not impute a promise to pay where there was a distinct

understanding that nothing should be paid. So one might be desirous of having a service performed, but be unwilling, under the circumstances to pay its reasonable value, or to stipulate in advance for the payment of any definite sum, and might agree with another not to pay either a stipulated sum or the reasonable value of the work, but to pay merely such sum as he might see proper to pay. It would be unjust in such a case to hold him bound absolutely to pay the reasonable value of the services. We think the authorities hold that, in such a case, should he fix the compensation in good faith, no more can be recovered than the amount so fixed. In *Butler v. Mill Co.,* 28 Minn. 205, 9 N. W. 697, the court say: 'We think the judgment as rendered is correct. The contract was clear and unambiguous. The stipulation that the amount of the compensation should depend upon the judgment and decision of the employer may have been an undesirable one for the plaintiff to consent to, but he nevertheless chose to accept the employment on those terms. The contract was an entirety, and of obligation in all its parts, and the law cannot, after it has been executed, relieve the plaintiff from the consequences of one of its stipulations which proves to be disadvantageous to him. That would, in effect, be making a new contract for the parties. It was the duty of the defendant to determine and fix the amount of the compensation honestly and in good faith, and if did so fix it, the obligation of the contract was fulfilled, so far as that matter is concerned.' So, in *Lee's Appeal,* 52 Conn. 363, 2 Atl. 758, the principle is thus announced: 'If A renders service for B under the agreement which leaves to B the right to determine the amount of compensation A shall receive after the service shall have been rendered, and how it shall be paid, and B, acting in good faith, so determines the compensation and mode of payment, A is as much bound by the deter-

mination as he would be if there had been an express agreement between the parties that he should receive that compensation, and in that mode, before the service was rendered; and if payment should be in fact made to that amount and in that mode A.'s claim would be extinguished.' "

The judgment was reversed and the cause remanded. Other cases are cited by the defendant in support of its contention, but owing to the conclusion we have reached we will not cite further authority nor quote from other opinions bearing upon the contention of the defendant.

The plaintiffs insisted that the rule contended for by the defendant is contrary to the doctrine as announced in *Van Arman v. Byington,* 38 Ill. 443.

In the *Van Arman* case it appears that the plaintiffs had employed the defendant as an attorney at law to defend a suit in the final settlement of which Van Arman, the defendant, received some $27,000 of the plaintiffs, all of which he paid over to them except the sum of $5,000, which he retained for his services. The plaintiffs brought suit to recover so much of the $5,000 thus retained by the defendant as might remain after deducting therefrom what his services were reasonably worth. The defendant insisted, as one of his grounds of defense, that the plaintiffs were estopped from alleging against the correctness of his charge for services because he was employed upon an agreement that he was to receive whatever amount he might see proper to charge and that his determination of what that amount should be was conclusive, unless he acted unfairly or oppressively.

It will be observed that they employed the attorney to perform services and they promised to pay him whatever he might see proper to charge. The court held that under such circumstances the attorney was bound to make his charge in good faith and that he

could recover only the reasonable value of his services; this was on the theory that an attorney has no right under such circumstances to take advantage of his client by making an arbitrary charge considerably in excess of the reasonable value of his services. It will be observed that the *Van Arman* case was one where the compensation was fixed by the attorney and the decision of the cause turned upon the form of the action. The suit was in assumpsit and the court in its opinion pointed out that the action could only lie on an express or implied promise. The court said there was no pretense that there was an express promise to pay any definite sum. The question was then, what was the implied agreement of the parties? Under the agreement in that case there was no implied promise that the client should pay more than a reasonable sum. The instant case is one in assumpsit. There was no express agreement to pay the sum demanded by plaintiffs. The contract and the construction given to it by the parties as shown in the correspondence negatives any suggestion that there was implied in the contract any agreement on the part of the defendant to pay more than the amount fixed by the general solicitor as being reasonable.

We are not prepared to say that there is anything in the opinion of the *Van Arman* case or other authorities relied upon by plaintiffs that is contrary to the contention of the defendants in this cause.

We are not unmindful of the fact that it is insisted by the plaintiffs that notwithstanding the terms of the contract, there is nothing to show that the general solicitor ever acted on the bill in question. While there may be no direct proof in the evidence, the record discloses that the plaintiffs were corresponding with Nelson J. Wilcox, who was then in the general solicitor's office and who was addressed by the plaintiffs as assistant general solicitor.

In view of the state of the record we are of the opinion that this point is not well taken by the plaintiffs. We are also of the opinion that it was the duty of the plaintiffs to report from time to time as to the work it was doing for the defendant and the compensation it was claiming.

It appears that a bill for $362 for the collection of a claim of $82.91 would, on its face, seem to be out of all proportion to the amount involved. Among the items presented by the plaintiffs in their statement of their account against the defendant is one of $40 for investigating the law; one of $65 for preparation for trial, and $25 for preparing brief of the authorities. Under the law there was an undoubted right of the railroad to recover and there was certainly no necessity. for a very extensive briefing of the case. There is no claim that the law in reference to the railway company recovering for an undercharge for freight was at all in an uncertain state.

The amount involved in the case was small. The judgment recovered, including interest and cost, was $97.98. There was nothing about this undercharge case that in any way made it different from any other ordinary undercharge case. A bill was rendered; the general solicitor fixed the compensation at $50; the defendant was entitled to have this done by the general solicitor by the express terms of its contract. The contract was one which the parties had the power to make. No question of bad faith in fixing the value of the services is raised.

We conclude, therefore, that the judgment of the circuit court of Stephenson county should be reversed and the cause remanded unless the plaintiffs shall, within 30 days after the filing of this opinion, enter a remittitur reducing the amount of the judgment to the sum of $50 and cost.

*Reversed and remanded, unless a remittitur is entered, reducing the judgment to $50 and cost.*